❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. 20-1000M(NJ) |
| Facebook User Name: Don Infamous Z; Facebook User ID: 1327048082 | ) ) ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before      August 4, 2020                *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Hon. Nancy Joseph                .
                                                                  *(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:      July 21, 2020 @ 1:51 p.m.          *Nancy Joseph*
                                                              *Judge's signature*

City and state:      Milwaukee, WI                          Hon. Nancy Joseph, U.S. Magistrate Judge
                                                              *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Premises to be Searched**

This warrant applies to information associated with the following Facebook user ID and stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California:

| NAME | FACEBOOK ID (UID) | FACEBOOK NAME |
|---|---|---|
| Zaal M. Zaal | 1327048082 | Don Infamous Z |

## ATTACHMENT B

### Items to be Seized

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past

event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked;"

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 DAYS of service of this warrant.

**B.     Information to be seized by the government**

All information described above in Section A that constitutes fruits, evidence, and instrumentalities of violations of Title 18, Title 18, United States Code, Sections 1591(a), 2421(a), and 2423(a) involving Zaal M. Zaal, including, for the account identifiers listed on Attachment A, information pertaining to the following matters:

(a)     Messages, photographs, videos, memes, status updates, comments, or other postings or communications related to:

    1.   Interstate travel;

    2.   "Pimping," "hoeing," prostitution, or the exchange of sex acts for money;

    3.   Recruitment of victims for sex trafficking;

    4.   AV1;

    5.   AV2.

    6.   "Goldi Baby"

(b)     Evidence of user attribution showing who used the Facebook account at the time the things described in this warrant were created, edited, or deleted;

(c)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner or user;

(d)     Evidence indicating the Facebook account owner or user's state of mind as it relates to the crime under investigation;

(d)      The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| **Facebook Username: Don Infamous Z; Facebook User ID: 1327048082** | ) ) ) |

Case No. 20-1000M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Sections 1591(a), 2421(a) and 2423(a) | Sex trafficking of child or by force, fraud, or coercion; violations of the Mann Act; transportation of minors with intent to engage in criminal sexual activity |

The application is based on these facts:

See attached affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Task Force Officer Neal R. Lofy
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
*(specify reliable electronic means)*

Date: July 21, 2020

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

I, Neal R. Lofy, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Task Force Officer with the Federal Bureau of Investigation (FBI) and have been so employed since 2013.

2.      I am a Detective with the Racine Police Department, a position I have held since 2012, and I have been employed by the Racine Police Department since 2006.  Since 2013, I have been assigned to the Special Investigations Unit as the lead investigator on the Greater Racine Human Trafficking Task Force.

3.      I am currently assigned to the FBI Wisconsin Human Trafficking Task Force.  My duties as a Task Force Officer with the FBI include human trafficking investigations involving minors and adults.  I have gained experience in conducting such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, and federal law enforcement agencies.

4.      I have investigated human trafficking and violent crimes against children cases for approximately 7 years.  I have attended human trafficking trainings provided by the FBI and state law enforcement.   I have provided training to various groups including law enforcement and local governmental organizations.  I have participated in numerous federal and local human trafficking investigations.

5.      The facts contained in this affidavit are known to me through my personal knowledge, training, and experience, and through information provided to me by other law enforcement officers that have provided information to me during the course of their official duties and whom I consider to be truthful and reliable.

1

**PURPOSE OF AFFIDAVIT**

6.       I make this affidavit in support of an application for a search warrant for information associated with a Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscribers or customers associated with the specified Facebook user ID.

7.       More specifically, I seek authorization to search Facebook's information associated with the following individual, whom I have identified by name as well as by Facebook account name:

| NAME | FACEBOOK ID (UID) | FACEBOOK NAME |
|---|---|---|
| Zaal M. Zaal | 1327048082 | Don Infamous Z |

8.       Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1591(a) and 2421(a) have been committed by Zaal M. Zaal.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

9.       Since this affidavit is only for the limited purpose of securing a search warrant, I have not set forth each and every fact known to me concerning this investigation.  I have included what I believe are facts sufficient to establish probable cause for the warrants sought.

**SUMMARY OF THE INVESTIGATION AND PROBABLE CAUSE**

**A.  Case Opening/Reports Received from Local law Enforcement**

10.       In April 2020, I became the case agent on a Human Trafficking investigation concerning Zaal M. Zaal, a male born in December 1977. During the course of my investigation, I reviewed reports

2

from local law enforcement organizations concerning the activities of Zaal M. Zaal. I consider these reports to be reliable.

B. **Cudahy Police Contact with AV1**

11.     On February 12, 2020, police officers of the Cudahy Police Department, including Cudahy Police Officer Brian Ploch, responded to 3540 East Library Drive, Apartment #304, Cudahy, Wisconsin 53110, regarding a noise complaint (people arguing). Upon arrival, the officers waited outside prior to knocking and confirmed that a verbal argument was occurring within apartment #304. Officer Ploch heard a male yelling at a female about a video.

12.     The officers were allowed inside apartment #304 by Zaal M. Zaal and made contact with a female identified as AV1, (a female born in January 1994) who was dressed only in lingerie. AV1 appeared under the influence of drugs or alcohol to Officer Ploch and was hesitant to talk with law enforcement. AV1 stated she did not have a cellphone and did not have any identification. AV1 informed the officers that she was from a different state and came to Wisconsin to be with Zaal, whom she loved.

13.     Inside the apartment, Officer Ploch made several observations that he believed to be suspicious. There was a large quantity of alcohol and boxes of cigars inside apartment #304, which caused him to believe it looked more like a party house than a living house. Also, inside the apartment was a display case with numerous chalices which had been decorated with jewels. Through my training and experience, people who control victims of prostitution sometimes purchase chalices decorated with jewels also known as, "Pimp Cups" to denote their status and reputation as pimps. Examples of publicly viewable posts from the "Don Infamous Z" Facebook account shows Zaal holding several chalices. These posts are appended to this affidavit in Attachment C. Additionally, inside the bedroom in which Officer Ploch spoke to AV1 was a stripper pole and web cameras.

C. **Interview of AV1 on March 7, 2020 by Cudahy Police Department (Part 1)**

14.     On March 7, 2020, Officer Ploch contacted AV1 via telephone (859)382-XXX and spoke to her for approximately an hour. AV1 indicated the following. At the time of the conversation, AV1

3

was no longer with Zaal. AV1 told Officer Ploch that Zaal had taken everything from her, including her clothes and money. AV1 told Officer Ploch that Zaal is going to do this to someone else and is already doing this to someone else.

15.    AV1 met Zaal through Facebook and started communicating with him through Facebook approximately one year prior to the date of this interview. AV1 was initially intrigued by Zaal's lifestyle that he portrays on Facebook. AV1 stated that Zaal gets girls by leading them into a luxurious life and once he has them, it is hard to escape. AV1 stated that Zaal uses the Facebook name, "Don Infamous Z." Investigators identified the "Don Infamous Z" Facebook account that AV1 had reported. It appears that Zaal M. Zaal controls this account. Pictures posted on the Facebook page matched Zaal's appearance observed during surveillance operations.

16.    AV1 made several trips to Wisconsin to visit with Zaal. Initially, AV1 did not want to discuss what occurred during these visits. AV1 did elaborate and say that she was not allowed to leave Zaal's apartment nor was she allowed to talk to anyone besides Zaal while she was there.

17.    Zaal asked AV1 to start working for him. This work entailed "WebCamming." "WebCamming" refers to a Cybersex practice in which buyers enter an online webcam chat site and pay sellers to perform sex acts on themselves or others in front of an internet connected device with live-streaming software. Victims of cybersex trafficking are trafficked or transported to 'cybersex dens,' which are rooms or locations with a webcam. The cybercrime also involves the transporting or streaming of images of the victims' bodies and sexual assaults in real time through a computer with a webcam to other computers connected to the internet. Zaal convinced AV1 to get on a WebCam in order for her to start making money. AV1 did not feel comfortable doing WebCam work, but wanted to impress Zaal and felt manipulated to do so.

18.    AV1 stated the money she earned from WebCamming went directly into Zaal's bank account and AV1 never saw any of it. AV1 stated that Zaal created a WebCam account and screen name for AV1 on the website Flirtforfree.com. AV1 believes that Zaal has now deleted the account.

4

19.     AV1 described what Zaal asked her to do on the webcam site. AV1 stated Zaal wanted AV1 to get a toy (referring to sex toys), but she did not feel comfortable doing that and told Zaal that she wanted to stop WebCamming.  AV1 went on to explain that people on the website would ask AV1 to shake her butt or show them her breasts in exchange for money. AV1 would do that, but eventually it became too much for her and she did not want to do it anymore. The money sent for these sexual acts went directly to Zaal. AV1 stated she never saw any of it. Zaal would tell AV1 that she cannot manage her money or that she did not need the money. Zaal also began referring to himself as a pimp.

20.     AV1 told Officer Ploch that things got worse and Zaal began pressuring her more and more. Zaal would yell at AV1 and tell her that she was not good enough, that she did not make enough money, and their relationship became violent. AV1 stated that Zaal always has a gun on him and has threatened AV1 with a gun in the past. Zaal has never pointed the gun at AV1. When things would get bad between them, AV1 stated she would shut up so things never got to the point of Zaal using the gun on her.

21.     AV1 told Officer Ploch that Zaal is keeping her belongings including her clothes and his refusing to give them back is a type of control method. AV1 believes that Zaal always knows her location and that he has tapped into her phone. AV1 stated that she would participate in private phone conversations and Zaal would later tell her details of the conversation.

22.     AV1 told Officer Ploch about another girl in which Zaal is talking with. AV1 only knows the girl by her Facebook name "Goldie Babi."  Zaal was introduced to "Goldie Babi" through Facebook. AV1 described text messages between Zaal and AV1 and feels she is easily manipulated and acts like a 15 year old.  AV1 believes this girl is young, maybe 17 or 18 years old. AV1 has not met "Goldie Babi." AV1 stated "Goldie Babi" is coming up to be with Zaal. AV1 stated "Goldie Babi" is from Albuquerque, New Mexico.  The Facebook profile name "Goldie Babi" is listed on Facebook, however, the profile is set to private and therefore no additional information about her is available.

5

23.     AV1 told Officer Ploch about several trips she took to Chicago with Zaal and a woman named Deborah E. Harrison or "Mama." Harrison makes Zaal's pimp cups. According to AV1, Harrison lives in Chicago and Zaal took her to see Harrison several times. When they made the trips to Chicago, Zaal would bring Harrison marijuana, CBD, and bottles of alcohol. When AV1 went out to dinner with Zaal and Harrison, Zaal asked AV1 to start calling him "Daddy," a term I know from my training and experience to be a title that many pimps or sex traffickers insist being called by the women whom they prostitute.

24.     AV1 told Officer Ploch that Zaal has done this to another girl, AV2 from Milwaukee. AV1 stated that Zaal has a couple other girls that are working out of the Super 8 Motel. Investigators believe this to be the Super 8 by Wyndham, Milwaukee Airport, 5352 South Howell Avenue, Milwaukee Wisconsin 53207. AV1 believes Zaal has a website to advertise the girls but does not know the page he is using.

D.  **Interview of AV1 on March 7, 2020 by Cudahy Police Department (Part 2)**

25.     On March 7, 2020, AV1 contacted Officer Ploch to continue to discuss the information she provided in their earlier conversation.

26.     AV1 told Officer Ploch that Zaal convinced her that if she did what he told her, he would take care of her for the rest of her life. Zaal asked AV1 to make money and asked AV1 to do sex work. AV1 eventually agreed to do what Zaal wanted.

27.     Over the course of approximately two weeks, AV1 sent Zaal thousands of dollars via Walmart wires. Zaal convinced AV1 that by sending the money, they would buy a house together and be a family. AV1 stated that she thought that Zaal was going to change and stop making her do things she did not want to do.

28.     Zaal took AV1 to a Super 8 motel. AV1 did not know the exact location of the hotel as she was not allowed out much and was not familiar with the area. While at the Super 8, Zaal would set up meetings with other men. The room at the Super 8 was in Zaal's name. Zaal would text AV1 and

6

inform her that she had someone coming to meet her. Zaal arranged more than four people to meet her for sex for a period of approximately three to four days.

29.     AV1 described "sex" as penis to vagina sexual intercourse.  AV1 did not get any money from these men as the money went straight to Zaal. According to AV1, Zaal would charge $150 for 30 minutes and $200 for 60 minutes with AV1. All of the prostitution occurred at the Super 8.  Zaal would drive AV1 to the motel and then pick her up.

30.     Zaal tried to get AV1 to use drugs and gave her cocaine on at least one occasion. Zaal would use THC products with her. AV1 believed Zaal was using drugs to take advantage of her.

31.     AV1 told Officer Ploch that if she did not do what Zaal wanted, she would be stuck. Zaal had all her money and she had no way out. Based on my training and experience, human trafficking victims are completely reliant on their traffickers and not have access to money or transportation and must rely solely on their traffickers for food, shelter, safety and necessities. These circumstances create a situation in which human trafficking victims feel trapped as they do not have the ability or means to leave their trafficker. Zaal would also make comments to her such as, "Bitch you're going to do what I want you to do," and, "you better listen to me." Zaal would call her names such as a whore.

32.     AV1 told Officer Ploch that prior to meeting Zaal, she had never engaged in prostitution before but has done exotic dancing in the past. She felt that working for Zaal would allow her to get out of dancing and create a better life for herself.

33.     AV1 told Officer Ploch that Zaal wanted her to strip and masturbate on webcam in exchange for money. People on the websites would send money electronically in exchange for AV1 to perform sex acts (such as strip or masturbate). AV1 never received any of that money. AV1 stated the money went directly to Zaal. AV1 stated she was conducting sex acts in exchange for money, via webcam, every day.  At the time AV1 was performing on the webcam, she believed that Zaal would not leave her and would use the money to take care of her. This turned out to be untrue.

7

34.     AV1 stated that Zaal would not take "no" for an answer. For example, besides being forced by Zaal to participate in webcam sessions and engage in sexual intercourse at the Super 8 Motel, Zaal forced AV1 into anal sex, which she did not want to do. AV1 did not view this as rape because she believed they were in a relationship. AV1 felt as though she could not say no to him.

35.     Zaal told AV1 that she should kill herself and that he is going to kill her. In my training and experience human traffickers will often tell their victims to kill/harm themselves as a means of manipulation and to try to maintain control of them. Zaal has asked AV1 for her out of state address, which AV1 did not give to him because she does not want to be put back in a situation in which she just left. AV1 wants to help law enforcement do something about him as she does not want what happened to her to happen to another person.

E. **Telephonic Interview of AV1 on April 3, 2020**

36.     On April 3, 2020, FBI Agent John Sokolowski spoke to AV1 telephonically. AV1 stated the following. AV1 met Zaal approximately one year ago on Facebook. They began communicating and eventually AV1 traveled to Milwaukee, WI to visit Zaal. Zaal continuously promised AV1 that he would provide her with the lifestyle that she wanted.

37.     When AV1 was staying with Zaal, he eventually asked her to "do stuff" (meaning perform sex acts in exchange for money) and became both physically and verbally abusive towards her if she refused.

38.     AV1 stated that Zaal uses flashy things, including pimp cups and jewelry, to attract girls. Zaal sends AV1 photos of other girls that he claims he is with to make AV1 jealous and come back to him. AV1 believes that Zaal will treat these other girls the same way he treated her because Zaal will never change and has hurt many other girls in the past. Zaal goes after weak women whom he can show strength to and then break down and control. Zaal has described his past girls as whores.

8

F. **Zaal's Facebook Account**

39.     Investigators identified the "Don Infamous Z" Facebook account that AV1 had reported. It appears that Zaal M. Zaal controls this account.  Pictures posted on the page are consistent with Zaal's appearance observed during surveillance operations.

40.      AV1 disclosed during multiple interviews that she communicated with Zaal through Facebook. Through my training and experience, I have learned that human traffickers often recruit and communicate with victims through Facebook.

41.     Examples of publicly viewable photos from the Don Infamous Z account are appended to this affidavit in Attachment C.

**GENERAL AND SPECIALIZED KNOWLEDGE CONCERNING FACEBOOK**

42.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

43.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

44.     A Facebook user can connect directly with other individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

9

45.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

46.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

47.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

48.     Facebook users can exchange private messages on Facebook with other users.  Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on

the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

49.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites.

50.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

51.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

52.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

53.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

54.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log

11

would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

55.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

56.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to

12

the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

57.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

58.     I know based on my training and experience that traffickers and pimps commonly use Facebook to indicate to others their status as a pimp, and to show cash, vehicles, clothing, and other material goods they have obtained as a result of the lifestyle. They also use Facebook to communicate with and recruit victims of human trafficking. Based on my training and experience I know that if a trafficker or pimp has recruited one victim through Facebook, there are likely to be additional victims that he or she has attempted to recruit through that same medium.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

59.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

13

## <u>CONCLUSION</u>

60.    I submit that this Affidavit supports probable cause for a search warrant authorizing the search of the "Don Infamous Z" Facebook account described in Attachment A for the items of evidence described in Attachment B.

61.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

62.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

14

**ATTACHMENT A**

**Premises to be Searched**

This warrant applies to information associated with the following Facebook user ID and stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California:

| NAME | FACEBOOK ID (UID) | FACEBOOK NAME |
|---|---|---|
| Zaal M. Zaal | 1327048082 | Don Infamous Z |

## ATTACHMENT B

### Items to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

16

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked;"

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 DAYS of service of this warrant.

17

**B.    Information to be seized by the government**

All information described above in Section A that constitutes fruits, evidence, and instrumentalities of violations of Title 18, Title 18, United States Code, Sections 1591(a), 2421(a), and 2423(a) involving Zaal M. Zaal, including, for the account identifiers listed on Attachment A, information pertaining to the following matters:

(a)    Messages, photographs, videos, memes, status updates, comments, or other postings or communications related to:

    1.  Interstate travel;

    2.  "Pimping," "hoeing," prostitution, or the exchange of sex acts for money;

    3.  Recruitment of victims for sex trafficking;

    4.  AV1;

    5.  AV2.

    6.  "Goldi Baby"

(b)    Evidence of user attribution showing who used the Facebook account at the time the things described in this warrant were created, edited, or deleted;

(c)    Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner or user;

(d)    Evidence indicating the Facebook account owner or user's state of mind as it relates to the crime under investigation;

(d)    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

18

**Attachment C**

**Excerpts from Publicly-Viewable Content on Don Infamous Z Facebook Page**







Case 2:20-mj-01000-NJ   Filed 07/21/20   Page 29 of 31   Document 1



22



Case 2:20-mj-01000-NJ   Filed 07/21/20   Page 31 of 31   Document 1